**IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ASHLEY VALENTINE<br>626 S Street, NW<br>Apt. TL-01<br>Washington, DC 20001<br><br>*Plaintiff*,<br><br>v.<br><br>CHILDREN'S NATIONAL HEALTH<br>NETWORK, Inc.<br>111 Michigan Avenue, NW<br>Washington, DC 20010<br>    SERVE:<br>        C T Corporation System<br>        1015 15th Street, NW<br>        Washington, D.C. 20005<br><br>and<br><br>ASHLEY LANE<br>111 Michigan Avenue, NW<br>Washington, DC 20010<br><br>*Defendant*. | * * * * * * * * * * * * * * * * * * * * * * * * * | Civil Action No.: 1:18-CV-02288<br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Ashley Valentine ("Ms. Valentine" or "Plaintiff"), through undersigned counsel, makes this complaint against her former employer, Children's National Health Network, Inc. ("Children's National" or the "Company"), and former supervisor, Ashley Lane ("Ms. Lane", together "Defendants"). Plaintiff asserts claims of wrongful termination in violation of District of Columbia public policy;; discrimination based on her race and/or color pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000(e), *et seq*. ("Title VII"); as well as racial discrimination pursuant to 42 U.S.C. §1981 and the D.C. Human Rights Act.

Plaintiff was retaliated against for reporting several biohazards and safety violations of the Code of the District of Columbia, the District of Columbia Municipal Regulations, and/or other District of Columbia law. Plaintiff was also subjected to racial discrimination and harassment in that she was paid less than her similarly situated white coworkers. Defendants were wholly dismissive of her complaints and in fact retaliated against her as punishment for complaining about the unfair pay, biohazards, and safety violations. Additionally, the Company explicitly discriminated against Plaintiff for her African-American race and dark skin color by paying her less than her similarly situated white colleagues, without justification. Defendants never remedied the safety violations and Plaintiff was forced to continue working in a workplace that violated DC law. These conditions were intolerable, illegal, and left Plaintiff no alternative but to involuntarily resign from her employment. This was a constructive discharge. Plaintiff seeks declaratory and injunctive relief, and awards of compensatory damages, punitive damages, attorneys' fees, and costs.

## JURISDICTION AND VENUE

1. This is a civil action arising under the laws of the United States. This Court has jurisdiction pursuant to 28 U.S.C. §1331.

2. The acts and omissions giving rise to Plaintiff's claims occurred in the District of Columbia, and there is no other district in which this action may be brought. Venue lies in this Court pursuant to 28 U.S.C. §1391(b) because Children's National resides in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission. The EEOC issued a right-to-sue letter which Plaintiff received no earlier than July 7, 2018, attached hereto as **Exhibit 1**.

## PARTIES

4. At all relevant times, Plaintiff was a resident of the District of Columbia.

5. Children's National is an incorporated entity registered to do business in the District of Columbia. Children's National is a healthcare system with a primary office located at 111 Michigan Avenue, NW, Washington, DC 20010.

6. At all relevant times, Ms. Lane was a supervisor at Children's National and Plaintiff's supervisor. This Court can properly exercise personal jurisdiction over Ms. Lane.

## FACTS COMMON TO ALL COUNTS

7. Plaintiff is an African-American adult woman.

8. Children's National hired Plaintiff on or about September 23, 2016 as a Clinical Research Coordinator. In exchange for her services, Children's National agreed to pay Plaintiff wages. Plaintiff worked for Children's National until about August 9, 2018. Throughout her employment, Plaintiff worked on clinical trials studying treatments for sickle cell anemia. Additionally, Plaintiff was also an advocate and community outreach organizer raising awareness of sickle cell anemia in the local community.

9. Plaintiff's job duties required her to work in a laboratory with dangerous chemicals and specimens of blood.

10. During the relevant time period, Plaintiff was a competent and dedicated employee. Although she had not received a formal performance review at her one year work anniversary, as required by Children's National's policy, Plaintiff had received plenty of positive feedback from superiors such as Dr. Andrew Campbell, Dr. Suvankar Majumdar, and Gifti Panlos.

11. On or about September 8, 2017, Plaintiff reported several biohazards and safety violations occurring in the sickle cell research lab to Angela Reid, Research Safety Coordinator.

Plaintiff reported violations of the Code of the District of Columbia, the District of Columbia Municipal Regulations, and other District of Columbia law, including but not limited to: a lack of a designated biohazard waste container; lack of soap; lack of any sterilization agent; unattended open specimens/biohazards; lack of garbage cans; lack of sinks/running water for washing hands; outdated equipment, like centrifuges used for spinning live specimens which lacked a safety stop button; chemical "hoods" or vents that were not plugged in or powered; lack of cleaning supplies; lack of safety equipment like goggles, gloves, and lab coats; plastic bags of blood samples strewn about on tables where employees ate; and an unpowered chemical hood used for storage although specimens were in active use beneath it.

12. On or about December 12, 2017, Dr. Majumdar, the Chief of Hematology, called Plaintiff directly and scolded her for reporting the biohazards and safety issues. Dr. Majumdar told Plaintiff to "stop talking about this issue because it makes the department look bad."

13. Plaintiff was distraught by this treatment from her supervisor and suffered anxiety and anguish at work as a result.

14. Beginning shortly after the time she made her report, and continuing until her final day of employment, Plaintiff began suffering retaliation from management at Children's National, most notably from her direct supervisor, Ms. Lane.

15. From the time Plaintiff reported the above violations until her last day of employment at Children's National, Ms. Lane and other managers at Children's National retaliated against Plaintiff for her report by engaging in conduct including, but not limited to: assigning Plaintiff tasks knowing that Plaintiff lacked the proper training or support to complete the tasks and refusing to provide Plaintiff with the training and support she needed; assigning tasks to Plaintiff without Plaintiff's knowledge; requiring Plaintiff to engage in regular work progress

reviews with supervisors every two weeks; micromanaging Plaintiff's work and subjecting her work to higher scrutiny; tripling her workload; and denying without justification her requests to use paid time off.

16. Plaintiff's coworkers who had not reported any violations of state law were not subjected to the same treatment described above.

17. Additionally, Plaintiff was required to continue working in the laboratory despite the known violations of District of Columbia law, as described above.

18. Additionally, Children's National revised its pay system in late 2016. According to the new system, a matrix was developed where employees' salaries were determined by multiple factors including level of education and work experience.

19. Despite Plaintiff having the same or better credentials, Plaintiff was paid less in wages than her similarly situated non-African American coworkers who performed her same duties.

20. Plaintiff repeatedly raised this issue to management, but no remedial action was taken.

21. Management never remedied the biohazard and safety violations Plaintiff reported on or about September 8, 2017. Plaintiff was required to continue working in the unsanitary and unhealthy environment throughout the rest of her employment in continuing violation of DC law.

22. The retaliation, racial discrimination, and unsanitary work conditions in violation of DC law were intolerable and drove Plaintiff to involuntarily resign from her employment with Children's National on about August 9, 2018.

23. Plaintiff's resignation was a constructive discharge. She would not have resigned but for the retaliation, racial discrimination, and unsanitary work conditions in which she was forced to continue working, in violation of DC law.

24. All of the above occurred on the premises of Defendant Children's National.

## CAUSES OF ACTION

### COUNT I
**Title VII – Discrimination/Harassment based on Race and/or Color**
**42 U.S.C. §2000e**
*(Plaintiff Ashley Valentine v. Defendant Children's National Health Network, Inc.)*

25. Plaintiff incorporates the foregoing paragraphs herein by reference.

26. While employed by Defendant Children's National, Plaintiff was subjected to racial and/or color discrimination and harassment with respect to the terms, conditions, and/or privileges of her employment. As outlined above, management paid Plaintiff less than her similarly situated white colleagues, despite Plaintiff's equal or better qualifications. When Plaintiff complained about this disparate treatment, she was ignored. Management never corrected the issue.

27. As a direct and proximate result of this illegal discrimination, culminating in Plaintiff's constructive discharge, as described above, Plaintiff has suffered loss of income, and/or other pecuniary losses, humiliation, emotional distress, and/or other non-economic damages.

28. Based upon the foregoing, Defendant Children's National engaged in discriminatory conduct with malice and/or reckless disregard for the federally-protected rights of Plaintiff.

### COUNT II
**D.C. Human Rights Act - Discrimination/Harassment based on Race and/or Color**
*(Plaintiff Ashley Valentine v. Defendant Children's National Health Network, Inc.)*

29. Plaintiff incorporates the foregoing paragraphs herein by reference.

30. Anti-race and anti-color discrimination provisions of the District of Columbia Human Rights Act ("DCHRA") are stated at DC ST § 2-1402.11. The DCHRA allows the recovery of compensatory damages.

31. While employed by Defendant Children's National, Plaintiff was subjected to racial and/or color discrimination and harassment with respect to the terms, conditions, and/or privileges of her employment. As outlined above, management paid Plaintiff less than her similarly situated white colleagues, despite Plaintiff's equal or better qualifications. When Plaintiff complained about this disparate treatment, she was ignored. Management never corrected the issue.

32. As a direct and proximate result of this illegal discrimination, culminating in Plaintiff's constructive discharge, as described above, Plaintiff has suffered loss of income, and/or other pecuniary losses, humiliation, emotional distress, and/or other non-economic damages.

33. Based upon the foregoing, Defendant Children's National engaged in discriminatory conduct with malice and/or reckless disregard for the rights of Plaintiff.

**COUNT III**
**Discrimination/Harassment based on Race**
**42 U.S.C. §1981**
*(Plaintiff Ashley Valentine v. Defendant Children's National Health Network, Inc. and Defendant Ashley Lane)*

34. Plaintiff incorporates the foregoing paragraphs herein by reference.

35. Pursuant to 42 U.S.C. §1981, all citizens have the same right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens."

36. While employed by Defendants, Plaintiff was subjected to racial discrimination. As outlined above, management paid Plaintiff less than her white colleagues, despite Plaintiff's equal or better qualifications. When Plaintiff complained about this disparate treatment, she was ignored. Management never corrected the issue.

7

37. This discrimination affected the material terms, conditions, and/or privileges of Plaintiff's employment contract with Defendants.

38. As a direct and proximate result of Defendants' illegal discrimination, culminating in Plaintiff's constructive discharge, as described above, Plaintiff has suffered loss of income, and/or other pecuniary losses, humiliation, emotional distress, and/or other non-economic damages.

39. Based upon the foregoing, Defendants engaged in discriminatory conduct with malice and/or reckless disregard for the federally-protected rights of Plaintiff secured by 42 U.S.C. §1981.

## COUNT IV
**Wrongful Termination in Violation of the Public Policy of the District of Columbia**
*(Plaintiff Ashley Valentine v. Defendant Children's National Health Network, Inc.*

40. Plaintiff incorporates the foregoing paragraphs herein by reference.

41. Research institutions, like Children's National, that use biohazards must adhere to safety procedures set forth in the Code of the District of Columbia, the District of Columbia Municipal Regulations, and/or other District of Columbia law.

42. It is the clear public policy of the District of Columbia that employees may not be retaliated against for reporting violations of these laws.

43. As described above, Plaintiff reported several biohazard and safety violations to Dr. Majumdar, Chief of Hematology at Children's National.

44. As outlined above, Plaintiff suffered retaliation from Children's National shortly after reporting these violations, which continued until her final day of work.

45. As described above, this retaliation affected the material terms, conditions, and/or privileges of Plaintiff's employment with Defendants.

46. Defendants never remedied the biohazard and safety violations Plaintiff reported to management. Defendants forced Plaintiff to continue working in the unhealthy and unsanitary environment in violation of DC law.

47. Due to the retaliation for having reporting the violations, and because she was directed to continue working in an unsanitary and unhealthy environment in violation D.C. law, Plaintiff was forced to involuntarily resign from her employment with Children's National.

48. Plaintiff's involuntary resignation was a constructive discharge.

49. As a direct and proximate result of the illegal retaliation, and Plaintiff's constructive discharge amounting to wrongful termination, Plaintiff has suffered loss of income, and/or other pecuniary losses, humiliation, emotional distress, and/or other non-economic damages

## **CLAIMS FOR RELIEF**

Plaintiff respectfully requests this Honorable Court grant the following relief:

1. Enter a judgment in favor of Plaintiff and against all Defendants, jointly and severally, for compensatory damages in the amount of Three Hundred and Fifty Thousand Dollars ($350,000.00).

2. Enter a judgment in favor of Plaintiff and against all Defendants, jointly and severally, for punitive damages in the amount of Three Hundred and Fifty Thousand Dollars ($350,000.00).

3. Assess reasonable attorneys' fees, representation expenses (included experts), and costs of suit in favor of Plaintiff and against all Defendants, jointly and severally.

4. Enter an injunction compelling Defendants to reinstate Plaintiff, and prohibiting Defendants from further discrimination and retaliation, or, in the alternative, compelling

Defendants to pay Plaintiff "front-pay,", and awarding other appropriate equitable relief including "back pay."

    5.    Grant Plaintiff such other and further relief as the nature of her cause may warrant.

Respectfully Submitted,

**MALLON & MCCOOL, LLC**

By: _____/s/_____
Joseph T. Mallon, Jr., Esq.
D.C. Fed. Bar No.: 441376
300 East Lombard Street, Suite 815
Baltimore, Maryland 21202
Phone:  (410) 727-7887
Fax:     (410) 727-4770
jmallon@mallonandmccool.com

*Counsel for Plaintiff*

## JURY DEMAND

Pursuant to Fed. R. Civ. Proc. 28, Plaintiff requests that all triable claims be tried before a jury.

_____/s/_____
Joseph T. Mallon, Jr

Defendants to pay Plaintiff "front-pay,", and awarding other appropriate equitable relief including "back pay."

    5.    Grant Plaintiff such other and further relief as the nature of her cause may warrant.

Respectfully Submitted,

**MALLON & MCCOOL, LLC**

By: _____/s/_____
Joseph T. Mallon, Jr., Esq.
D.C. Fed. Bar No.: 441376
300 East Lombard Street, Suite 815
Baltimore, Maryland 21202
Phone:  (410) 727-7887
Fax:     (410) 727-4770
jmallon@mallonandmccool.com

*Counsel for Plaintiff*

## JURY DEMAND

Pursuant to Fed. R. Civ. Proc. 28, Plaintiff requests that all triable claims be tried before a jury.

_____/s/_____
Joseph T. Mallon, Jr